UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
PEARL GLASSBERG,

                Plaintiff,

  -against-

STAPLES THE OFFICE SUPERSTORE
EAST, INC. d/b/a STAPLES

                Defendant.
--------------------------------------------------------X

**REPORT &
RECOMMENDATION**

08–CV–2132 (KAM) (JMA)

A P P E A R A N C E S:

Steven B. Dorfman
Friedman & Moses, LLP
233 Broadway, Suite 901
New York, NY 10279
    *Attorney for Plaintiff*

Allison C. Liebowitz
Simmons Jannace, LLP
75 Jackson Avenue
Syosset, NY 11791
    *Attorney for Defendant*

**AZRACK, United States Magistrate Judge:**

In this trip-and-fall action, plaintiff Pearl Glassberg ("Glassberg" or "plaintiff") alleges that she suffered personal injuries as a result of the defendant's negligent placement of a flatbed handcart in the checkout aisle of its office supply store. Defendant Staples ("Staples" or "defendant") moves for summary judgment arguing that it owed no duty to warn the plaintiff about the cart because, as a matter of law, the cart was open and obvious and not inherently dangerous. The Honorable Kiyo A. Matsumoto referred the motion to me for a Report and Recommendation. For the reasons discussed below, I respectfully recommend that the Court grant the defendant's motion and dismiss the complaint with prejudice.

1

# I. <u>BACKGROUND</u>[1]

Pearl Glassberg entered Staples located at 2892 Ocean Avenue in Brooklyn, New York early in the afternoon on Thursday, September 20, 2007. (Glassberg Interrogs. ¶ 5.) She had been there between ten and twenty times before this visit. (Glassberg Dep. 27:23.) While she was shopping, another customer, assisted by a Staples employee, brought a boxed office chair to a cash register for purchase. (Register Video 13:39:55.04; Barrett Dep. 17:8-13.) With its packaging, the chair was large enough that transporting it required the use of a flatbed handcart called a "U-boat." The U-boat consisted of a rectangular platform on wheels with a ladder-backed handle that extended vertically from one of the platform's short sides. (Register Video 13:40:05.70; Barrett Dep. 14:14-15:4, 24-25; Glassberg Dep. 37:3-4.) The U-boat measured approximately four feet long by two feet wide and the handle projected vertically between three and five feet. (Barrett Dep. 14:14-24, 23:14-15; Glassberg Dep. 36:1-19, 107:21-25.) Both the handle and platform were silver in color, and the platform's wheels elevated it a few inches off of the store's black, carpeted floor. (Barrett Dep. 13:20-17:15; Register Video 13:40:05.70.) Staples allows customers to use U-boats to move large items around the store and parking lot, but employees are trained not to leave them in the checkout aisles because they may present a tripping hazard. (Barrett Dep. 38:3-39:8, 44:15-18.)

The boxed office chair sat atop the U-boat's platform in a white box that rose approximately three feet vertically against the U-boat's handle. (Barrett Dep. 23:9-26:15; Glassberg Dep. 41:12-22.) The box did not occupy the entirety of the U-boat's platform, so that

---

[1] The facts are drawn from the complaint (Dkt. No. 26, Ex. "A" ("Compl.")), the parties' Rule 56.1 Statements (Dkt. No. 37 ("Pl. 56.1 St."); Dkt. No. 25 ("Def. 56.1 St.")), plaintiff's interrogatory responses (Dkt. No. 26, Ex. "E" ("Glassberg Interrogs.")), plaintiff's deposition testimony (Dkt. No. 26, Ex. "F," Mar. 16, 2009 ("Glassberg Dep.")), the deposition testimony of Alfredia Barrett (Dkt. No. 26, Ex. "G," Mar. 16, 2009 ("Barrett Dep.")), and video footage from two surveillance cameras located near the cash registers and customer service desk. (Dkt. No. 26, Ex. "I" ("Register Video" and "Service Video")). The plaintiff does not contest the accuracy of the surveillance footage.

approximately one-and-a-half to two feet of the side of the platform lacking the handle remained exposed. (Glassberg Dep. 36:7-19; Register Video 13:40:04.60.) A portion of the handle remained visible over the box as well. (Glassberg Dep. 41:12-22; Register Video 13:40:04.60.)

To ring up the purchase, the attending employee, accompanied by the customer buying the chair, pulled the U-boat, handle first, into a checkout aisle and positioned it next to a register operated by cashier Alfredia Barrett ("Barrett"). (Barrett Dep. 9:13-14, 19:13-23; Register Video 13:40:06.60.) The handle/chair end of the U-boat faced the far end of the aisle while the unoccupied portion of the platform extended one-and-a-half to two feet toward the aisle's entry point. (Register Video 13:40:06.60) The attending employee positioned the U-boat at an angle so that if a customer were to enter the checkout aisle from the store's interior and approach Barrett's register, she would encounter an ever-diminishing space between the U-boat and the checkout counter: the exposed side of the U-boat's platform as far as a foot or more from the counter, but the side with the handle and box only a few inches from the register. (Register Video 13:30:04.60; Barrett Dep. 18:18-23.)

After the customer and the attending employee wheeled the U-boat to the register, Barrett began ringing up the chair. (Barrett Dep. 18:20-19:6; Register Video 13:41:18.80; Service Video 13:41:15.93.) However, the customer questioned the price so the attending employee left the checkout aisle to check the price while the customer stayed behind with the U-boat. (Id.) Shortly thereafter the customer followed to check the chair's price himself, telling Barrett that he would return momentarily to complete the transaction and leaving the U-boat behind. (Barrett Dep. 34:17-21; Register Video 13:41:57.34; Service Video 13:41:57.67.)

Seconds after the other customer left, plaintiff approached Barrett's checkout aisle where the U-boat and boxed chair waited in their original position. (Register Video 13:41:57.34-

3

13:42:07.16; Service Video 13:41:57.67-13:42:08.16.) The plaintiff entered the ever-diminishing space between the U-boat and the cash register, and presented her items for purchase. (Id.) Barrett did nothing to influence the plaintiff to come to her register, but she rang up the plaintiff's purchase while waiting for the chair-buying customer to return with the verified price. (Barrett Dep. 29:5-22.) Her transaction completed within less than a minute, the plaintiff turned nearly 180 degrees to her right, towards the very limited space between the handle/chair end of the U-boat and the cash register, and took a step forward into the unoccupied portion of the U-boat's platform. (Glassberg Dep. 106:14-19.) In so doing, she tripped over the unoccupied portion of the platform and fell to the floor. (Register Video 13:42:59.18; Service Video 13:42:58.90; Barrett Dep. 30:21-31:13; Glassberg Dep. 37:5-38:25, 106:14-107:3.) The plaintiff claims that her fall resulted in a fractured right elbow, pain, and mental anguish. (Compl. ¶ 21.)

## II. DISCUSSION

### A. Summary Judgment Standard

The Court should grant summary judgment when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The burden of showing that there is no triable issue of material fact rests upon the party seeking summary judgment. Gallo v. Prudential Residential Serv., L.P., 22 F.3d 1219, 1223 (2d Cir. 1994). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 324-25.

The burden then shifts to the nonmoving party to "set forth specific facts demonstrating there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). The nonmovant must identify facts that constitute more than a restatement of elements contained within the pleadings, id. at 248, and "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

An issue of fact is material if it affects the outcome of the suit, and "it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Anderson, 477 U.S. at 248; see also Konikoff v. Prudential Ins. Co. of Am., 234 F.3d 92, 97 (2d Cir. 2000). In considering those facts, the Court must draw all inferences in favor of the party against whom summary judgment is sought. Anderson, 477 U.S. at 255; U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962); Gallo, 22 F.3d at 1223.

B. **New York Premises Liability**

Jurisdiction over this matter is based on diversity, so state law governs the substantive claim. Erie R. Co. v. Tomkins, 304 U.S. 64 (1938).[2] To establish a prima facie case for negligence in the State of New York, a plaintiff must show: (1) the defendant owed her a duty of care; (2) the defendant breached that duty; and (3) the defendant's breach was the proximate cause of an injury sustained by the plaintiff. See, e.g., Solomon v. City of New York, 66 N.Y.2d 1026, 1027 (1985). It is well-settled that a landowner has a duty to "maintain [its] premises in a

---

[2] When exercising diversity jurisdiction, a federal court must apply the choice of law rules of the forum state. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496-97 (1941). New York employs an interest analysis in resolving choice of law questions, "giving controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." Babcock v. Jackson, 12 N.Y.2d 473, 482 (1963). Here, the plaintiff is a New York resident, the incident occurred in New York, and the defendant operates numerous stores in New York. Therefore, New York has the greatest interest in the case and New York law controls. Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531 (2d Cir. 1997).

5

reasonably safe condition" in view of the surrounding circumstances, which includes a "duty to warn those lawfully on the premises of potentially dangerous conditions that are not readily observable." Comeau v. Wray, 241 A.D.2d 602, 603 (3d Dep't 1998); see also Basso v. Miller, 40 N.Y.2d 233, 241 (1976); Pinero v. Rite Aid, 294 A.D.2d 251, 252 (1st Dep't 2002), aff'd by 99 N.Y.2d 541 (2002). However, there is no duty to protect or warn a customer against the risk of a condition that is open and obvious and, as a matter of law, not inherently dangerous; under such circumstances, the condition is a warning itself. MacDonald v. City of Schenectady, 308 A.D.2d 125, 128 (3d Dep't 2003); see also Tagle v. Jakob, 97 N.Y.2d 165, 169 (2001); Espinoza v. Hemar Supermarket, Inc., 43 A.D.3d 855, 855 (2d Dep't 2007); Cupo v. Karfunkel, 1 A.D.3d 48 (2d Dep't 2003); Pinero, 743 A.D.2d at 252.

## C. Staples' Duty to Warn

Staples argues that it is entitled to summary judgment because it had no duty to warn or protect the plaintiff against the U-boat because, as a matter of law, the U-boat's presence in front of Barrett's cash register was an open and obvious condition that was not inherently dangerous. Although the plaintiff argues that genuine issues of fact exist as to whether the U-boat was open and obvious, her arguments are without merit.

A condition is open and obvious if it is readily observable through the reasonable use of one's own sense. Brown v. Melville Indus. Associates, 34 A.D.3d 611, 611 (2d Dep't 2006). "While the issue of whether a hazard is latent or open and obvious is generally fact-specific and thus usually a jury question, a court may determine that a risk was open and obvious as a matter of law when the established facts compel that conclusion . . . ." Tagle, 97 N.Y.2d at 169; Cupo, 1 A.D.3d at 52 ("We do not suggest that a court is precluded from granting summary judgment to a landowner on the ground that the condition complained of by the plaintiff was both open and

6

obvious and, as a matter of law, was not inherently dangerous." ) (emphasis in original).

The U-boat at issue here was clearly visible and no reasonable person could conclude otherwise. The coloring, dimensions, and placement of the U-boat, as can be observed from the surveillance footage, establish that the cart stood out from its surroundings. Plaintiff attempts to manufacture a factual dispute about whether the U-boat stood out by citing the conflicting testimony of Barrett and the plaintiff: Barrett testified that the U-boat platform and the carpet were very different colors while the plaintiff testified that they were both very similar in color. (Pl. Mem at 14.) However, the surveillance footage, which the Court is compelled to credit over the plaintiff's recollection, see Scott v. Harris, 550 U.S. 372, 380 (2007) (holding that the lower courts erred in adopting plaintiff's version of the facts when considering defendant's motion for summary judgment because a videotape in evidence directly contradicted the plaintiff's testimony); Dove v. City of New York, No. 03-CV-5052, 2007 WL 805786, at *6 (E.D.N.Y. Mar. 15, 2007) (rejecting plaintiff's account and granting summary judgment to defendant because medical evidence contradicted plaintiff's version of events), plainly shows the stark contrast between the silver U-boat and the black carpet.

The boxed chair, which was bright white and rose to approximately the same height as the counter a few inches away, made the U-boat even more obvious. The footage additionally demonstrates that the unoccupied portion of the U-boat platform that plaintiff tripped over was unobstructed and in plain view for several yards as the plaintiff approached the register and passed and stood within inches of it. (Register Video 13:42:02.56-13:42:07.16.) The U-boat did not change position between the time the plaintiff approached the register and the time she tripped over it.

7

New York courts consider such conditions open and obvious as a matter of law and routinely refuse to submit that determination to the discretion of juries. In <u>Gagliardi v. Walmart Stores, Inc.</u>, 52 A.D.3d 777 (2d Dep't 2008), the plaintiff was injured when she tripped over a box containing an unassembled chest of drawers that was placed in the defendant store's aisle. The Appellate Division found that the box was open and obvious and dismissed plaintiff's appeal from an order of summary judgment, awarding costs to the defendant. <u>Id.</u> at 777. In <u>Connor v. Taylor Rental Ctr., Inc.</u>, 278 A.D.2d 270 (2d Dep't 2000), the plaintiff tripped over the prongs of a forklift, which were lowered to approximately four inches off the ground, in the defendant's parking lot. In dismissing the plaintiff's appeal from summary judgment, again with costs, the court relied on evidence showing that the forklift was in plain view. <u>Id.</u> at 270. In <u>Russell v. Archer Bldg. Ctrs. Inc.</u>, 219 A.D.2d 772 (3d Dep't 1995), the plaintiff fell over a display rack in the defendant's store when she stepped backward into it. After the trial court denied the defendant store's motion for summary judgment, the Appellate Division reversed and granted costs to the defendant, relying on a photograph that indicated that the display was readily observable through the reasonable use of one's senses. <u>Id.</u> at 772

Plaintiff further attempts to create a triable factual dispute as to whether the U-boat was open and obvious by asserting that she did not see the unoccupied portion of the U-boat prior to tripping over it. However, under New York law, whether a plaintiff observed a condition prior to tripping over it is immaterial to the question of whether the condition was open and obvious. <u>See, e.g.</u>, <u>Gibbons v. Lido, Point Lookout Fire Dist.</u>, 293 A.D.2d 646, 647 (2d Dep't 2002) (reversing the trial court's denial of summary judgment and holding that plaintiff's failure to see an open and obvious cement block on the floor of a well-lit firehouse before she tripped over it did not preclude the court from finding that the block was open and obvious as a matter of law);

Chranky v. Marshalls, Inc., 273 A.D.2d 266, 266 (2d Dep't 2000) (holding that a shopper's failure to observe a stationary clothing rack before tripping over it was not material to whether the court may find as a matter of law that it was open and obvious).

Neither was the U-boat inherently dangerous. The U-boat at issue in this case is similar to those commonly used in stores by both customers and employees, and New York courts have found that, as a matter of law, such carts are not inherently dangerous when placed in areas of customer traffic. In Stern v. Costco Wholesale, 63 A.D.3d 1139, 1139 (2d Dep't 2009), the plaintiff tripped and fell over a flatbed cart that "was approximately four feet long and two to three feet wide, had a six-inch-high bed with a handle at one end, and was available for use by both customers and employees." The Appellate Division affirmed summary judgment against the plaintiff, with costs, because the cart in the aisle did not create an inherently dangerous condition. Id. at 1139. That decision also referenced Bernth v. King Kullen Grocery Co., Inc., 36 A.D.3d 844 (2d Dep't 2007), in which the plaintiff fell over a U-boat in the aisle of a grocery store. There, too, the Appellate Division affirmed summary judgment for defendant and awarded costs, because the U-boat in the store aisle was an inherently dangerous condition. Id. at 844.

The plaintiff submits no evidence that the U-boat at issue was used improperly or that it suffered from any defect that made it particularly dangerous among U-boats. Instead, the plaintiff proposes that danger adhered in the U-boat's placement, relying on Barrett's testimony that Staples trains its employees not to allow idle carts to remain in areas of customer traffic for fear of creating a tripping hazard. However, while Staples may recognize some hazard of idle carts in customers' paths, New York courts have determined that U-boats in store aisles are not inherently dangerous. Moreover, a general awareness that a condition may pose a danger under certain circumstances is insufficient by itself to establish that a particular instance of such a

9

condition was inherently dangerous. See Piacquadio v. Recine Realty Corp., 84 N.Y.2d 967, 969 (1994) (citing Gordon v American Museum of Natural History, 67 N.Y.2d 836, 838 (1986) ("[A] 'general awareness' that a dangerous condition may be present is legally insufficient to constitute notice of the particular condition that caused plaintiff's fall . . . .").

The plaintiff attempts to rebut the fact that the U-boat was open and obvious by relying upon Michalski v. Home Depot, Inc., 225 F.3d 113 (2d Cir. 2000). In Michalski, a store employee directed the plaintiff to search for an item above eye-level on the store's warehouse-like displays. As the plaintiff did so, she tripped over a low-lying pallet on the far side of a parked forklift. Id. at 115-16. In reversing the district court's grant of summary judgment for the defendant, the Second Circuit first found that, unlike here, there were genuine issues of material fact as to whether the pallet was open and obvious because evidence in the record, including testimony and still photographs, indicated that the pallet may have been obscured by the forklift. Id. at 122. The Circuit then held more broadly that "even if a jury finds the pallet to have been open and obvious . . . New York law imposed a duty of care on [the defendant] if the hazardous nature of the pallet was readily foreseeable and [the defendant] had reason to know that its customers might not expect, or be distracted from observing, the hazard." Id. at 115.

The plaintiff's reliance on Michalski is misplaced, for that case was carefully limited to its own unique circumstances. The Michalski Court did not overturn the longstanding open and obvious doctrine. Rather, it emphasized that the doctrine did not relieve Home Depot of its duty to warn in that particular circumstance because, by shelving items above eye level, Home Depot intentionally arranged the premises in a manner likely to distract Michalski's attention away from patent dangers on the floor, thereby creating a foreseeable risk of harm from an otherwise readily visible condition. No such circumstances were present in this case. Neither the

plaintiff's own deposition testimony nor the surveillance footage suggest any facts that would cause the average reasonable customer to be distracted from obvious conditions in the checkout aisle, or that such a customer would be unlikely to anticipate a U-boat style shopping cart in the checkout aisle of a store that is known to sell furniture and other large items. See Anton v. Correctional Medical Services, Inc., 74 A.D.3d 1682, 1682 (2010) (affirming summary judgment for defendant under the open and obvious doctrine where "there [was] nothing in the record to suggest that [plaintiff] would have been prevented from also looking where he was going and seeing what was there to be seen"); Pinero, 294 A.D.2d at 253-54 (declining to follow Michalski's "interesting theory of negligence" where the defendant had no "reason to know or expect that plaintiff might be distracted from observing the presence of the so-called hazardous wagon" that caused her fall).

### D. Staples' Duty to Maintain a Reasonably Safe Premises

Plaintiff correctly argues that, while the fact that a condition is open and obvious may relieve a landowner from a duty to warn, a landowner is never relieved of the general duty to maintain reasonably safe premises at all times. See Westbrook v. WR Activities-Cabrera Markets, 5 A.D.3d 69, 72-73 (1st Dep't 2004) (citing cases). To establish breach of this duty, the plaintiff must show "that the defendant either created a dangerous condition or had actual or constructive knowledge" of it but failed to alleviate the danger. Segretti v. Shorenstein Co., East, L.P., 256 A.D.2d 234, 235 (1st Dep't 1998). Plaintiff thus attempts to defeat summary judgment by asserting that a factual dispute exists as to whether Staples created the condition that caused the plaintiff's fall. However, for the same reasons that the U-boat was not inherently dangerous, it did not constitute an unsafe condition. See, e.g., Plis v. North Bay Cadillac, 5 A.D.3d 578, 578 (2d Dep't 2004) (holding that the defendant had no duty to warn and did not breach its duty to

11

maintain its property in reasonably safe condition where the plaintiff tripped over a security chain that was open, obvious, and not inherently dangerous). Accordingly, because Staples did not breach its duty to maintain reasonably safe premises, the question of who created the condition is immaterial.

### III. CONCLUSION

Plaintiff cannot establish a prima facie case of negligence because the condition that caused her injury was, as a matter of law, open and obvious and not inherently dangerous and the defendant maintained its premises in a reasonably safe condition. Accordingly, I respectfully recommend that the Court grant the defendant's motion for summary judgment and dismiss the complaint with prejudice.

Any objections to this Report & Recommendation ("R&R") must be filed on ECF within fourteen (14) days of the date of this R&R. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72.

SO ORDERED.


Dated: September 13, 2010
       Brooklyn, New York


                                                                  _____/s/_____
                                                                  JOAN M. AZRACK
                                                                  UNITED STATES MAGISTRATE JUDGE